Fidelity Bank v. N.C. Dep't of Revenue, 2013 NCBC 27.

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                         SUPERIOR COURT DIVISION
COUNTY OF WAKE                             10 CVS 3405

| | |
|---|---|
| THE FIDELITY BANK, )<br>           Petitioner )<br>                       )<br>      v. )<br>                       )<br>NORTH CAROLINA DEPARTMENT )<br>OF REVENUE, )<br>           Respondent ) | **OPINION AND ORDER ON PETITION FOR JUDICIAL REVIEW OF FINAL AGENCY DECISION IN A CONTESTED TAX CASE** |

THIS MATTER comes before the court on a Petition for Judicial Review of a Final Agency Decision ("Petition") in a contested tax case arising under N.C. Gen. Stat. § 105-241.16 (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), filed by Petitioner, pursuant to Article IV of the North Carolina Administrative Procedure Act; and

THE COURT, after considering the Petition, briefs and arguments of counsel and appropriate matters of record, AFFIRMS, in part, the Final Agency Decision and REMANDS, in part, to the North Carolina Department of Revenue for additional findings.

> *Ward and Smith, P.A., by Donalt J. Eglinton, Esq., Amy P. Wang, Esq. and A. Rexford Willis, III, Esq. for Petitioner.*

> *Attorney General Roy Cooper, Esq. by Assistant Attorney General Perry J. Pelaez, Esq. and Kay Linn Miller Hobart, Esq. for Respondent.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1]     Petitioner held United States government securities purchased at a discount to face value ("Discount Bonds").  Petitioner earned income on the Discount Bonds held until maturity.  The portion of the income on the Discount Bonds that represents the difference between the amount Petitioner paid for them and the amount Petitioner receives at maturity is referred to as "Market Discount Income."  In 2001, some of the Discount Bonds matured and Petitioner earned Market Discount Income on those bonds.[1]  For the 2001 tax year, Petitioner reported the Market Discount Income as other taxable income on its North Carolina tax returns, but then deducted the Market Discount Income, contending that the Market Discount Income constituted interest earned on a United States obligation,[2] and therefore was deductible on Petitioner's North Carolina return.

[2]     On July 8, 2002, Respondent issued to Petitioner a Notice of Corporate Income Tax Assessment ("Notice of Assessment"), proposing to assess corporate income tax on the Market Discount Income previously deducted by Petitioner on its 2001 tax returns as interest income on a United States obligation.[3]  The Notice of Assessment also proposed to collect any accrued interest on the proposed assessment amount.  On July 31, 2002, Petitioner objected, in writing, to the Notice of Assessment.

---

[1] The amount of Market Discount Income earned on the Discount Bonds and deducted by Petitioner is $724,098.
[2] The factual background and contentions of the parties are more fully set out in paragraphs 12-15 and 20-38.
[3] The Notice of Assessment proposed to tax the $724,098 as corporate income.  The effect of such proposal would result in Petitioner owing an additional $49,963 in income tax and $1,132.63 in interest on the $724,098.

On May 17, 2006, Respondent notified Petitioner that it was disallowing the claimed deduction.

[3]     On September 12, 2008, Respondent issued its Notice of Final Determination with regard to the disputed tax assessment on the Market Discount Income.

[4]     On November 11, 2008, Petitioner filed a Petition for Contested Case Hearing in the Office of Administrative Hearings, challenging the disputed tax assessment on the Market Discount Income.

[5]     Respondent and Petitioner filed motions for summary judgment, on February 17, 2009, and February 18, 2009, respectively, on the disputed issues with regard to taxability of the Market Discount Income and collection of accrued interest on the unpaid assessed tax.

[6]     On February 26, 2009, the Administrative Law Judge ("ALJ") assigned to the contested case heard oral argument from Respondent and Petitioner on the parties' respective summary judgment motions. The parties agreed, at the request of the ALJ, to narrow their respective motions for summary judgment in order to separate the issues of (a) whether the Market Discount Income from Petitioner's disposition of Discount Bonds is deductible as interest income from a United States obligation for purposes of North Carolina corporate income tax and (b) whether interest that accrued during the period beginning in July 2002 and ending on May 16, 2006, on the disputed tax assessment was properly assessed.[4]

---

[4] As discussed *infra*, Petitioner seeks to abate any interest on tax debt owed from Market Discount Income for the period beginning in July 2002 and ending on May 16, 2006. Petitioner contends that it should not have to pay interest for this period because Petitioner thought the issue had been resolved due to Respondent's inaction during this period.

[7]     As to the first issue, on June 30, 2009, the ALJ granted Respondent's Partial Motion for Summary Judgment, concluding that Petitioner could not deduct its Market Discount Income as interest income on a United States obligation from its state tax return.

[8]     As to the second issue, on November 16, 2009, the ALJ granted Petitioner's Partial Motion for Summary Judgment, concluding that the interest operated as a penalty against Petitioner and collection would be inequitable in view of Respondent's failure for a period of almost four years to take action on Petitioner's objection to the tax assessment.  The ALJ abated any interest that had accrued on unpaid tax from the Market Discount Income for the period beginning in July 2002 and ending on May 16, 2006.

[9]     On January 22, 2010, Respondent issued a consolidated Final Agency Decision ("Final Agency Decision").  Respondent adopted the ALJ's decision to grant summary judgment for Respondent on the issue of taxability of Market Discount Income.  However, Respondent did not adopt the ALJ's decision to grant Petitioner summary judgment on the issue of accrued interest on the unpaid tax, and the accrued interest was not abated.  Respondent remanded the case to the ALJ for a recommendation on whether a statutory basis exists for Respondent to compromise a tax liability (i.e., the accrued interest).

[10]     Before the ALJ could consider the issue of the accrued interest on remand, on February 24, 2010, Petitioner filed this Petition, seeking reversal of the Final Agency Decision and an entry of summary judgment in its favor.

[11]    The Petition has been fully briefed and argued and is ripe for determination.

## II.

## FACTUAL BACKGROUND[5]

[12]    Petitioner is a C corporation and a wholly-owned subsidiary of Fidelity Bancshares (N.C.), Inc.,[6] headquartered in Fuquay-Varina, North Carolina.[7]

[13]    Petitioner timely filed its North Carolina income tax return for the 2001 tax year and paid its corporate income tax due on the amount reported.[8]

[14]    As discussed previously, during the 2001 tax year, a certain number of the Discount Bonds held by Petitioner reached maturity.[9]  Upon maturity of the Discount Bonds, Petitioner earned $724,098 in Market Discount Income.[10]  In addition to earning Market Discount Income, Petitioner also earned coupon interest on the Discount Bonds.[11]

[15]    For the 2001 tax year, Petitioner reported the coupon interest received from the Discount Bonds as taxable interest income when it was received.[12]  For the same tax year, Petitioner deducted the $724,098 representing Market Discount Income from its taxable income, claiming that such amount was deductible as interest income on a United States obligation.  Respondent did not allow Petitioner to claim the

---

[5] The parties agree that the facts are undisputed and that no genuine issue of material fact exists with regard to the issues before the court.  Pet's Br. Supp. Pet. Judicial Review & Entry Summ. J. Pet'r ("Petitioner Memo") 9-10; Resp't Principal Br. ("Respondent Memo") 4.
[6] Final Agency Decision (Findings of Fact) ¶ 1.
[7] *Id.* ¶ 2.
[8] *Id.* ¶ 3.
[9] *Id.* ¶ 4.
[10] *Id.* ¶¶ 4, 7.
[11] Coupon interest is interest received by the bondholder on a bond prior to the bond maturity date.
[12] Final Agency Decision (Findings of Fact) ¶ 5.  Petitioner's reporting of the coupon interest received on its tax returns is not in dispute and not the subject of this Petition.

deduction, and instead proposed taxing the Market Discount Income as "gain on disposition of discounted bonds."[13]  The dispute over the characterization of the Market Discount Income gives rise to the Petition currently before the court.

III.

DISCUSSION

A.

Legal Standard

[16]    When a "trial court exercises judicial review of an agency's final decision, it acts in the capacity of an appellate court."  *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662 (2004).  Review of an agency's final decision either granting or denying summary judgment is governed by G.S. 150B-51(d), which states, "[i]n reviewing a final agency decision allowing . . . summary judgment, or in reviewing an agency decision that does not adopt an [ALJ]'s decision allowing . . . summary judgment pursuant to G.S. 150B-36(d), the court may enter any order allowed by . . . Rule 56."

[17]    In this case, Petitioner contends that Respondent erred in affirming the decision of the ALJ granting partial summary judgment in favor of Respondent on the issue of deductibility of Market Discount Income for North Carolina corporate income tax purposes.[14]  Petitioner further contends that Respondent erred by not adopting the ALJ's grant of partial summary judgment in favor of Petitioner on the of abatement of accrued interest.

[18]    It is proper for this court to determine "whether there were any genuine issues of material fact and whether any party was entitled to judgment as a matter of

---

[13] Final Agency Decision (Findings of Fact) ¶ 8.
[14] Petitioner Memo 10.

law." *Krueger v. N.C. Criminal Justice Ed. & Training Standards Comm'n*, 198 N.C. App. 569, 576 (2009) (quoting *York Oil Co. v. N.C. Dep't of Env't Health & Natural Res.*, 164 N.C. App. 550, 555 (2004) (quotations omitted). In doing so, the court applies "the standard established by Rule 56." *Id.* at 576-77.

[19]   Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006). The standard requires the court to view the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998). As previously discussed, the parties agree that the facts are undisputed and that no genuine issue of material fact exists with regard to the issues before the court.[15]

## B.

## Market Discount Income

[20]   The question before the court relating to the deductibility of Market Discount Income presents an issue of first impression. Petitioner contends that the Final Agency Decision, adopting the ALJ's decision that Market Discount Income cannot be deducted as interest income for tax purposes, improperly interprets the interplay between the Internal Revenue Code ("Code") and the North Carolina Revenue Act ("Revenue Act"). Petitioner contends that the Code and Revenue Act, read together, allow Petitioner to deduct its Market Discount Income in determining its state net

---

[15] Petitioner Memo 9-10; Respondent Memo 4.

income.[16]  Respondent argues to the contrary, contending that the profit earned from trading in United States bonds is not deductible under G.S.105-130.5(b)(1) as interest income.

[21]    As previously discussed, because Petitioner seeks review of a Final Agency Decision adopting summary judgment on this issue, the court will review the record to determine whether summary judgment was proper under Rule 56.

[22]    In determining a taxpayer's state net income, the starting point is the taxpayer's federal taxable income, which is then adjusted pursuant to certain additions and deductions.  G.S. 105-130.2(5c) (defining "state net income" to be "[t]he taxpayer's federal taxable income as determined under the Code, adjusted as provided in G.S. 105-130.5 . . . .").[17]  Therefore, the issue is whether Petitioner can deduct the $724,098 amount as interest income under G.S. 105-130.5(b)(1).

[23]    Whether or not Petitioner can deduct its Market Discount Income in determining state net income is a question of statutory interpretation.  It is a well-settled rule of statutory construction that "[w]here the language of a statute is clear and unambiguous, . . . the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions . . . ."  *Morton Bldgs., Inc. v. Tolson*, 172 N.C. App. 119, 122 (2005) (quoting *State v. Camp*, 286 N.C. 148, 152 (1974)).  Additionally, "[d]eductions . . . are privileges, not rights, and are allowed as a matter of legislative grace."  *Aronov v. Sec'y of Revenue*, 323 N.C. 132, 140 (1988) (citing *Ward*

---

[16] Allowable deductions to state net income are specifically set out in G.S. 105-130.5(b).  The deduction at issue in this case is set out in G.S. 105-130.5(b)(1).

[17] Included in federal taxable income is, among other things, ordinary income and interest income.  It is important to note that Petitioner's Market Discount Income is included in its federal taxable income, even if treated as interest income under the Code for federal tax purposes.  The focus of this Petition is whether Petitioner's Market Discount Income can be deducted from the amount that makes up its federal taxable income to determine its state net income.

*v. Clayton*, 5 N.C. App. 53 (1969)).  The court is required to construe strictly any statute providing for a deduction and resolve ambiguities in favor of taxation.  *Id.*  Simply put, when interpreting a taxing statute, "[t]axation is the rule; exemption the exception."  *Id.* (quoting *Broadwell Realty Corp. v. Coble*, 291 N.C. 608, 611 (1977)) (internal quotations omitted).

[24]    Here, Petitioner is seeking to avail itself of a deduction from taxation.  In doing so, Petitioner must overcome a statutory construction that weighs heavily in favor of taxation.  Accordingly, Petitioner must clearly meet all requirements for any deduction listed in G.S. 105-130.5(b), which sets out those deductions from federal taxable income that can be made in determining state net income.

[25]    As previously stated, the deduction at issue is found in G.S. 105-130.5(b)(1).  This subsection states that a deduction may be taken from federal taxable income for:

> Interest upon the obligations of the United States or its possessions, to the extent included in federal taxable income: Provided, interest upon the obligations of the United States shall not be an allowable deduction unless interest upon obligations of the State of North Carolina or any of its political subdivisions is exempt from income taxes imposed by the United States.

G.S. 105-130.5(b)(1).  A taxpayer must meet four requirements to be able to take the deduction outlined in G.S 105-130.5(b)(1): (a) the income must be interest, (b) the interest must be on an obligation of the United States, (c) the interest must have been included in federal taxable income and (d) interest on North Carolina bonds must be exempt from federal taxation.

[26]     The parties disagree with respect to the first and last requirements above (i.e., whether Petitioner's Market Discount Income is interest income and whether such income on North Carolina bonds is exempt from federal taxation).

[27]     As to the first requirement, that the income be interest, Petitioner argues that its Market Discount Income qualifies as interest income.  Petitioner's logic is this: (a) North Carolina has adopted the Code as its starting point for determining state net income; (b) section 1276 of the Code states that Market Discount Income shall be treated as interest for purposes of the Code; (c) therefore, Market Discount Income should be treated as interest for purposes of G.S. 105-130.5(b)(1).[18] Respondent contends instead that the profit earned on discount bonds should be taxed as ordinary income and should not be treated the same as periodic interest payments earned on the bond (i.e., coupon interest).[19]

[28]     Petitioner's argument directs the court to section 1276 of the Code as support for its argument that Market Discount Income should be treated as interest income for purpose of G.S. 105-130.5(b)(1).  Section 1276[20] states that, "[e]xcept as otherwise provided in this section, gain on the disposition of any market discount bond shall be treated as ordinary income to the extent it does not exceed the accrued market discount on such bond."  26 U.S.C. § 1276(a)(1).  However, section 1276(a)(4), further clarifies the Code's characterization of Market Discount Income, stating that Market

---

[18] Petitioner Memo 11.
[19] Respondent Memo 5-6.
[20] Section 1276 specifically addresses the type of income at issue here: gain on market discount bonds (i.e., Market Discount Income).

Discount Income, even though treated as ordinary income under subsection (a)(1), "shall be treated as interest for purposes of [the Code]."[21]  *Id.* § 1274(a)(4).

[29]     Following the rules of statutory construction of a tax statute, the court adopts the plain and ordinary meaning of the word "interest" found in G.S. 105-130.5(b)(1) and construes any ambiguities in favor of taxation.  There are no references to Market Discount Income in G.S. 105-130.5(b)(1).  Accordingly, the court interprets the word "interest," as used in G.S. 105-130.5(b)(1), to mean those periodic payments received by the holder of a bond, or other obligation, of the United States, but not Market Discount Income received upon a bond reaching maturity.  Instead, for state tax purposes, Market Discount Income should be treated as ordinary income, similar to a profit or gain earned on any other transaction.

[30]     The court's interpretation of "interest" is supported by the Code and the Revenue Act.  There is simply no support in G.S. 105-130.5(b)(1) to read the word interest to include Market Discount Income.  The court finds nothing to connect G.S. 105-130.5(b)(1) with section 1276(a)(4) of the Code.  In fact, section 1276(a)(4) on its face is limited to the Code.[22]

[31]     Further, the provision in the Revenue Act that states federal taxable income shall be used to determine state net income does not operate as a wholesale adoption of all Code provisions and definitions.  If the General Assembly intended to adopt the Code's treatment of Market Discount Income as interest it could have done so

---

[21] Notwithstanding the Code's treatment of Market Discount Income on United States obligations as interest income, Market Discount Income on local and state bonds is treated as ordinary income.  *Cf.* § 103(a) *and* § 1276(a)(4) (read together, these sections clearly provide that Market Discount Income realized on local or state issued bonds shall be treated as ordinary income, and not as interest, in determining a taxpayer's gross income under the Code).

[22] *See* 26 U.S.C. § 1276(a)(4) (stating that Market Discount Income shall be treated as income *for purposes of [the Code].* (emphasis added)).

by specific reference. The absence of any reference in G.S. 105-130.5(b) to section 1276(a)(4) of the Code or Market Discount Income is compelling, especially in light of the fact that there are twelve references to the Code within the other subsections of G.S. 105-130.5(b).[23]

[32] Market Discount Income is not interest and is only treated as interest for purposes of the Code to determine a taxpayer's federal tax obligation. In any event, the Code's treatment of Market Discount Income as interest does not alter the express statutory language found in G.S. 105-130.5(b)(1). Accordingly, the court CONCLUDES that Market Discount Income is not interest under G.S. 105-130.5(b)(1). Petitioner has not met its burden of overcoming the presumption that exists in favor of taxation when interpreting a statute allowing a deduction. Petitioner cannot deduct its Market Discount Income on United States obligations for state tax purposes.[24]

[33] Pursuant to Rule 56(c), summary judgment is appropriate when there are no genuine issues as to any material facts and any party is entitled to a judgment as a matter of law. Here, both parties agree that the underlying facts are undisputed on the issue of the deductibility of Market Discount Income,[25] and the court therefore CONCLUDES that there exist no genuine issue as to any material facts in this regard. Accordingly, summary judgment is appropriate with respect to this issue. *See Forbis v.*

---

[23] *See e.g.*, G.S. 105-130.5(b)(3a), (6), (7), (9), (12), (25) (referencing the Code to provide context and definitions for which deductions can be taken, and for how much, in order to determine state net income).
[24] In addition to the court's conclusion that Market Discount Income is not interest for state tax purposes, the court is also persuaded that reciprocity does not exist, which also prevents Petitioner from taking a deduction for its Market Discount Income. The policy behind the deduction permitted by G.S. 130-105(b)(1) is to permit a deduction for interest earned on federal obligations, if interest on local and state obligations likewise is exempt from federal taxation. It is undisputed that interest on local and state obligations is exempt from gross income for federal tax purposes. *See* 26 U.S.C. § 103. However, Market Discount Income on local or state obligations is not exempt and is taxed as ordinary income under the Code. *See id.* § 1276(a)(4). Accordingly, for the additional reason that reciprocity does not exist, no deduction can be taken for Market Discount Income on federal obligation for state tax purposes.
[25] *See* Petitioner Memo 10 (stating that the evidence is uncontroverted and that summary judgment is appropriate); Respondent Memo 4 (stating that "[t]he facts are undisputed.").

*Neal*, 361 N.C. 519, 523 (2007) (quoting Rule 56(c) standard for entering summary judgment).  Therefore, in light of the above conclusion that Petitioner cannot deduct Market Discount Income as interest for state tax purposes, summary judgment should be entered in favor of Respondent on this issue.  In this regard, the Final Agency Decision should be AFFIRMED.

C.

Interest Abatement

[34]    The second issue raised by the Petition deals with abatement of the accrued interest on the Market Discount Income tax amount beginning in July 2002 and ending on May 16, 2006.  Specifically, Petitioner argues that it should not have to pay interest on the Market Discount Income tax amount for the above period because any delay in paying the tax is attributable to Respondent's delay.[26]  Respondent contends that the interest cannot be abated because a tax becomes a debt when it is due, and interest begins to accrue at that time.[27]

[35]    The ALJ's decision granted summary judgment in Petitioner's favor on this issue, stating that the accrued interest on the unpaid tax operated as a penalty, which Petitioner should not have to pay as a result of Respondent's delay.[28]

[36]    Respondent did not adopt the ALJ's decision on this issue and did not abate the interest Petitioner owed on the unpaid tax amount.[29]  Instead, Respondent rejected some of the ALJ's findings of fact, made additional findings of fact and concluded that interest on the Market Discount Income tax amount was properly

---

[26] Petitioner Memo 20-21.
[27] Respondent Memo 9.
[28] Decision Granting Partial Summ. J. Pet'r 2.
[29] Final Agency Decision 9.

assessed against Petitioner for the period that the tax was due but unpaid.[30]  However, Respondent concluded that genuine issues of material facts existed regarding whether the interest on the tax should be abated.[31]  Respondent remanded the issue to the ALJ for a hearing to determine whether Respondent should consider abating the accrued interest.[32]

[37]   Petitioner asks the court to enter summary judgment in its favor on this second issue.  Petitioner contends that Respondent committed procedural error because it did not comply with the requirements of G.S. 150B-36(b1) and (b2).[33]  Specifically, Petitioner contends that Respondent erred when it did not adopt some of the ALJ's findings of fact, made findings of fact not contained in the ALJ's decision and did not adopt the ALJ's decision.  Petitioner objects to Findings of Fact 15, 16, 17 and 18 and Respondent's rejection of the ALJ's decision.  Petitioner contends that the above findings of fact and rejection of the ALJ's decision were made in contravention to statutory requirements.

[38]   G.S. 150B-36(b) provides that an "agency shall adopt each finding of fact contained in the [ALJ]'s decision unless the finding is clearly contrary to the preponderance of the admissible evidence . . . ."  G.S. 150B-36(b).  The agency is statutorily mandated to "set forth separately and in detail . . . the reasons for not adopting the findings of fact" and "the evidence in the record relied upon by the agency

---

[30] *Id.* 8.
[31] *Id.*
[32] *Id.* 8-9.
[33] The court recognizes that G.S. 150B-36, in its entirety, has been repealed by Session Laws 2011-398, s. 20, enacted by the General Assembly in an attempt to overhaul the administrative hearing process. The provisions of Session Laws 2011-398, s. 20 were effective as of January 1, 2012, and apply to all contested cases commenced on or after that date.  However, the repeal of G.S. 150B-36 was not retroactive for contested cases already commenced before the above effective date.  This contested case was commenced on November 11, 2008, with the filing of the Petition, well before G.S. 150B-36 was repealed.  Accordingly, the court applies G.S. 150B-36 as it read when this action commenced.

in not adopting the finding of fact contained in the [ALJ]'s decision."  G.S. 150B-36(b1).

Furthermore, for any additional findings of fact made by the agency not contained in the

ALJ's decision, the statute requires the agency to "set forth separately and in detail the

evidence in the record relied upon by the agency in making the finding of fact."  G.S.

150B-36(b2).  "Any new findings of fact made by the agency shall be supported by a

preponderance of the admissible evidence in the record."  *Id.*  Also, the agency cannot

make additional findings of fact that conflict with any finding of fact made by the ALJ,

unless the ALJ's finding of fact is specifically not adopted by the agency.  *Id.*

[39]    Findings of fact usually are not appropriate at the summary judgment

stage, except to set out undisputed facts.  *See Krueger v. N.C. Criminal Justice Educ. &*

*Training Standards Comm'n*, 198 N.C. App. 569, 578 (2009).  However, the ALJ in this

case did make findings of fact, some of which were modified and rejected by

Respondent in its Final Agency Decision.  Therefore, the court will review the modified

and rejected findings of fact through the lens of G.S. 150B-36(b), (b1) and (b2).

[40]    Respondent rejected the ALJ's Findings of Fact 3 and made Finding of

Fact 15.  The ALJ's Finding of Fact 3 stated, "[Respondent] cannot explain the inactivity

by the agency during the four (4) year gap."  Respondent rejected this finding of fact

and made its own Finding of Fact 15, which states, "[Respondent] could not locate any

records to explain the inactivity between September 2002 and May 2006."  As stated

above, Respondent must accept each finding of fact made by the ALJ unless such it is

clearly contrary to the preponderance of the evidence.  This is a very high burden for

Respondent to overcome, which requires Respondent to state its reasoning in detail for

not adopting the ALJ's findings of fact and the evidence in the record relied upon.

[41]     Respondent stated that portions of the ALJ's Finding of Fact 3, "are contrary to the evidence in the record and shall be modified."[34]  This does not meet the standard set forth in G.S. 150B-36(b1).  An ALJ's findings of fact must be accepted unless clearly contrary to the preponderance of the evidence.  Additionally, other than stating that the ALJ's Finding of Fact 3 is contrary to the evidence in the record, Respondent fails to provide any further explanation to support why it rejected the ALJ's Finding of Fact 3.  Respondent must state in detail its reasons for not adopting a particular finding of fact and the evidence relied upon by Respondent in doing so, which Respondent has failed to do.  Simply put, Respondent has not complied with G.S. 150B-36(b1) in rejecting the ALJ's Finding of Fact 3.

[42]     Along with Finding of Fact 15, Respondent made Findings of Fact 16, 17 and 18, which were not made by the ALJ.  Respondent cited to several places in the record as support for its additional findings of fact.  However, in making these findings of fact, Respondent did not set forth "in detail the evidence in the record relied upon by the agency in making the finding of fact."  G.S. 150B-36(b2).  For Finding of Fact 15, Respondent cites solely to its own brief as support.  For Finding of Fact 16, 17 and 18, Respondent cites to selected excerpts from various documents in the record and includes those excerpts as its additional findings of fact.  For Finding of Fact 16 and 18, Respondent merely quotes from evidence in the record as its finding of fact.  By doing so, Respondent has not meet the requirement that it set forth in detail the evidence on which it relied in making the new findings of fact and does not show that the preponderance of the evidence in the record supports the new findings of fact.  With

---

[34] Final Agency Decision ¶ 15 (Findings of Fact).

regard to Findings of Fact 15, 16, 17 and 18, Respondent has not complied with G.S. 150B-36(b2) in making additional findings of fact.

[43]    Because Respondent failed to meet the requirements of G.S. 150B-36(b1) and (b2), the court CONCLUDES that this issue should be remanded to Respondent for compliance with the statute.

[44]    Petitioner also contends that Respondent committed error in its Final Agency Decision by not adopting the ALJ's granting of summary judgment to Petitioner with respect to the interest abatement issue.  As previously discussed, the standard of review for this court is set by G.S. 150B-51(d) when reviewing a Final Agency Decision that does not adopt the ALJ's decision granting summary judgment.  The statute provides that a "court may enter any order allowed by Rule 56" when "reviewing an agency decision that does not adopt an [ALJ]'s decision allowing . . . summary judgment . . . ."  G.S. 150B-51(d).  The scope and standard of review require the court to apply the same "standard established by Rule 56 . . . ."  *Krueger*, 198 N.C. App. at 576-77.

[45]    Notwithstanding Respondent's failure to comply with the above statutory requirements, it appears to the court that genuine issues of material fact exist with regard to whether the accrued interest should be abated for the period beginning in July 2002 and ending on May 16, 2006.  Pursuant to G.S. 105-237.1, tax debt liability may be compromised if it is found that a compromise is in the best interest of the State and, among other criterion, would avoid an unjust result.  The ALJ did not make findings of fact with regard to tax debt liability abatement, as required by G.S. 105-237.1.  Consequently, this issue should be remanded by Respondent to the ALJ for appropriate

findings of fact as to whether the accrued interest should be abated pursuant to G.S. 105-237.1.[35]

[46]    Petitioner's motion for summary judgment on this interest abatement issue therefore should be DENIED.

IV.

CONCLUSION

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[47]    The Final Agency Decision granting summary judgment in favor of Respondent with regard to the first issue, dealing with the deductibility of Market Discount Income, is AFFIRMED.

[48]    The Final Agency Decision denying summary judgment in favor of Petitioner with regard to the second issue is REMANDED to Respondent for compliance by Respondent with G.S. 150B-36(b1) and (b2) as to those findings of fact rejected or added by Respondent in the Final Agency Decision.  Further, Respondent shall then REMAND this second issue to the ALJ for a recommendation, as required by G.S. 150B-36(d), of whether the accrued interest should be abated, pursuant to the standard set forth in G.S. 105-237.1.

---

[35] At the time the Petition was filed, Respondent had remanded this case to the ALJ for a hearing to determine whether the requirements of G.S. 105-237.1 had been met to justify interest abatement.  G.S. 150B-36(d) states that if an ALJ grants summary judgment and the agency does not adopt that decision, "[the agency] shall set forth the basis for failing to adopt the decision and shall remand the case to the administrative law judge for hearing."  In its Final Agency Decision, Respondent complied with this statute and remanded the issue to the ALJ for hearing.  However, G.S. 150B-36(d) permits the party aggrieved by the Final Agency Decision to seek immediate judicial review, which Petitioner elected to do.

This the 3rd day of May, 2013.